UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 6/29/2020

BRAULIO THORNE, *on behalf of himself and all other persons similarly situated*,

Plaintiff,

v.

BOSTON MARKET CORPORATION,

Defendant.

No.   19-CV-9932 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Braulio Thorne, who is legally blind, brings this action on behalf of himself and all other persons similarly situated against Defendant Boston Market Corporation.  He alleges violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, as well as violations of state and municipal law, on the basis that Boston Market fails to sell accessible gift cards for visually impaired people.  Now before the Court is Defendant's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the following reasons, the motion is granted.

## BACKGROUND[1]

Plaintiff, who resides in New York, "is a visually-impaired and legally blind person who requires Braille, which is a tactile writing system, to read written material."  Compl. ¶¶ 2, 24. Defendant, which is "one of the largest restaurant chains in the world," "owns, operates and/or controls Boston Market restaurants across the United States," including several "located in the

---

[1] The Court draws the following facts from Plaintiff's amended complaint and the documents attached thereto, *see* Dkt. 17, and accepts them as true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Southern District of New York." *Id*. ¶¶ 26-27.  Plaintiff lives "on the same street and less than a block from Defendant's restaurant on 271 W. 23rd St[.], New York, NY." *Id.* ¶ 25.  He alleges that he has previously "been a customer . . . on prior occasions" at Defendant's restaurants.  *Id.* ¶ 21.

On October 21, 2019, seeking to purchase a gift card from Defendant, "Plaintiff telephoned Defendant's customer service office" and "inquired if Defendant sold store gift cards containing Braille." *Id.* ¶ 16.  He spoke with one of Defendant's employees, who informed him that Defendant does not sell Braille-embossed gift cards.  According to Plaintiff, he was "not offer[ed] any alternative auxiliary aids or services . . . with respect to Defendant's gift cards." *Id.* ¶ 17.  He also alleges that he was otherwise unable to find "accessible store gift cards" because "they are not offered by the Defendant." *Id.* ¶ 18; *see also id.* ¶ 36 ("Defendant's gift cards, or their packaging, do not contain Braille or any other auxiliary aid for effective communication[.]").

Plaintiff asserts that the lack of accessible gift cards means he "cannot independently access the information contained thereon in order [to] use the card like a sighted person." *Id.* ¶ 5.  For instance, he "cannot ascertain information about the gift card, like the balance, the gift card's terms and conditions of use, or even be able to distinguish Defendant's branded gift cards from others in the same manner as non-blind persons." *Id.* ¶ 20.  As a result, he alleges that he cannot independently use one of Defendant's gift cards to make a purchase in-store, on the phone with a customer service agent, or through its website.[2]  *Id.* ¶¶ 6-7.  Plaintiff asserts that he will purchase at least one gift card from Defendant as soon as accessible ones are offered for sale.  *See id.* ¶ 21.

---

[2] In his opposition brief, Plaintiff then states that Defendant's gift cards "can only be used in-restaurant and not online."  Pl.'s Opp. at 3.

On October 27, 2019, Plaintiff filed this action.  He filed an amended complaint – here, the operative complaint – on February 14, 2020.  Dkt. 17.  Plaintiff "seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's store gift cards will become and remain accessible to blind and visually-impaired consumers."  Compl. ¶ 10.  On February 28, Defendant filed the instant motion to dismiss, Dkt. 19, which Plaintiff opposed on March 19, Dkt. 28.  Defendant filed its reply on April 16.  Dkt. 31.  On March 4, the Court granted a request from the Retail Litigation Center, Inc., Restaurant Law Center, National Retail Federation, Retail Gift Card Association, and National Association of Theatre Owners for leave to file an amici curiae brief.  Dkt. 26.  On June 5, in light of the ongoing public health crisis, the Court held oral argument by telephone.

## LEGAL STANDARD

"At the outset," the Court "ha[s] an independent obligation to determine whether federal jurisdiction exists in this case." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 48 (2d Cir. 2012).  "A district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Platinum-Montaur Life Sci., LLC v. Navidea Biopharm., Inc.*, 943 F.3d 613, 618 (2d Cir. 2019).

At this stage, "the proper procedural route" to challenge standing "is a motion under Rule 12(b)(1)." *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006).  "The standard of review for 12(b)(1) motions is 'substantively identical' to Rule 12(b)(6) motions," *Alphas v. City of N.Y. Bus. Integrity Comm'n*, No. 15-CV-3424 (ALC), 2017 WL 1929544, at *2 (S.D.N.Y. May 9, 2017), but with the critical difference that the burden is on the plaintiff asserting subject matter jurisdiction to "prov[e] by a preponderance of the evidence that [subject matter jurisdiction] exists," *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).  To resolve a motion to dismiss under Rule 12(b)(1), a court "may refer to evidence outside the pleadings."  *Id.*

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal citations omitted).  In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'"  *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citation omitted).

## DISCUSSION

Plaintiff brings this action seeking a ruling that Title III of the ADA requires public accommodations, such as Defendant, to offer Braille-embossed – or otherwise accessible – gift cards.  Within the past year, a flood of filings in this district have raised this question.  To date, only Judges Schofield, Woods, and Aaron have addressed it.  *See Dominguez v. Taco Bell Corp.*, No. 19-CV-10172 (LGS), 2020 WL 3263258 (S.D.N.Y. June 17, 2020); *Dominguez v. Foot Locker, Inc.*, No. 19-CV-10628 (SDA) (S.D.N.Y. May 12, 2020); *Dominguez v. Banana Republic, LLC*, No. 19-CV-10171 (GHW), 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020).  In its motion, Defendant argues that this action should be dismissed because Plaintiff lacks standing and fails to state a plausible claim for relief.  Because the Court determines that Plaintiff has

4

standing, it reaches the merits but concludes that Plaintiff's claim fails under the ADA.

Defendant's motion is, therefore, granted pursuant to Rule 12(b)(6).

## I.     Standing

Defendant first seeks dismissal of this action pursuant to Rule 12(b)(1).  Specifically, it

contends that Plaintiff lacks standing because he "fails to plausibly allege that he intends to visit

Defendant's store if store gift cards with Braille are offered."  Def.'s Mot. at 19.

For the Court to adjudicate this matter, Plaintiff must first establish that he has standing

pursuant to Article III of the Constitution.  *See Cortlandt St. Recovery Corp. v. Hellas*

*Telecommc'ns*, 790 F.3d 411, 417 (2d Cir. 2015) ("In its constitutional dimension, standing

imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself

and the defendant within the meaning of Art. III.").  To do so, Plaintiff must demonstrate that he

suffered "(1) an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the

defendant; and (3) that can likely be redressed by a favorable decision."  *Mantena v. Johnson*,

809 F.3d 721, 731 (2d Cir. 2015).  An "injury in fact" must be both "concrete and particularized"

and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560 (1992).

In the ADA context, as is relevant here, an injury in fact is established where (1) the

plaintiff "allege[s] past injury under the ADA"; (2) "it is reasonable to infer from [the] complaint

that this discriminatory treatment will continue"; and (3) "it is also reasonable to infer, based on

the past frequency of [the plaintiff's] visits and the proximity of [the public accommodation] to

[his] home, that [he] intends to return to [the public accommodation] in the future."  *Camarillo v.*

*Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008).  As such, plausibly alleging standing under the

ADA requires Plaintiff to show not only that he "encountered barriers at public accommodations

prior to filing the[] complaint[]," but also that he has "a plausible intention or desire to return to the place but for the barriers to access." *Small v. Gen. Nutrition Co.*, 388 F. Supp. 2d 83, 86-87 (E.D.N.Y. 2005); *see also Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592 (RJS), 2011 WL 4686500, at *1 (S.D.N.Y. Oct. 5, 2011) ("[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm.").

Although a close question, Plaintiff has made the requisite showing.  First, Plaintiff plausibly alleges a past injury under the ADA when he tried to purchase a Braille-embossed gift card from Defendant on October 21, 2019, but was told that Defendant does not sell one.  *See* Compl. ¶ 16.  Although Plaintiff discovered over the phone – not at one of Defendant's stores – that Defendant does not sell Braille-embossed gift cards, that fact is not dispositive here.  "In the context of the ADA, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, is injury in fact."  *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006).   This is because "deterrence constitutes an injury under the ADA" and thus an ADA plaintiff "need not attempt to overcome a obvious barrier" to plausibly allege a past injury.  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013).

At oral argument, in addressing whether Plaintiff has standing, Defendant urged that "there's no injury here because there's no violation of the ADA."  Dkt. 37 at Tr. 4:17-18.  When pressed on this argument, Defendant explained that it is "relying primarily on the merits because . . . you eliminate standing as soon as you have no injury, which means you have no violation of the law."  *Id.* at Tr. 5:3-5.  Whether an injury is plausibly alleged so as to satisfy a jurisdictional analysis, however, is a distinct inquiry from whether an injury is plausibly alleged as to the merits of an ADA claim.  *See Bond v. United States*, 564 U.S. 211, 219 (2011) ("[T]he question

whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of the dispute."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction[.]").  Irrespective of whether Plaintiff has a "valid" ADA claim on the merits, he has an "arguable" claim sufficient to confer jurisdiction. *Steel Co.*, 523 U.S. at 89.  This argument is therefore unpersuasive.

Indeed, in both *Dominguez v. Banana Republic, LLC*, and *Dominguez v. Taco Bell Corp.*, Judges Woods and Schofield conducted a similar standing analysis.  There too, the plaintiffs sought to purchase gift cards from the defendants over the phone.  Both judges concluded that the plaintiffs had plausibly alleged a past injury because they had "directly encounter[ed] the alleged disability-based discrimination."  *Banana Republic, LLC*, 2020 WL 1950496, at *3; *see also Taco Bell Corp.*, 2020 WL 3263258, at *2 ("The FAC satisfies the past injury requirement by alleging that Plaintiff encountered a barrier when he requested and was denied a braille gift card and was not offered any auxiliary aid.").  This Court concludes as much here.

In addition, based on the allegations in Plaintiff's complaint, "it is reasonable to infer" that Defendant's alleged "discriminatory treatment will continue."  *Camarillo*, 518 F.3d at 158. Plaintiff alleges that Defendant does not presently sell accessible – Braille-embossed gift cards – and "lacks a plan and policy reasonably calculated to make [their gift cards] fully and equally accessible to, and independently usable by, blind and other visually-impaired customers." Compl. ¶ 57.  He also asserts that "[w]ithout injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the store gift cards[.]"  *Id.* ¶ 59.  At this early stage, this is adequate to allege the existence of continuing discriminatory treatment.

Lastly, Plaintiff also alleges sufficient facts to infer an intent to return to Defendant's restaurant upon acquiring an accessible gift card. "Intent to return is a highly fact-sensitive inquiry that incorporates a range of factors," including "the frequency of the plaintiff's past visits," "the proximity of the defendant's services, programs, or activities to the plaintiff's home," and "any other factor 'relevant to the calculation' including the plaintiff's 'occupation or demonstrated travel habits.'" *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-CV-5432 (NSR), 2016 WL 6901314, *5 (S.D.N.Y. Nov. 18, 2016) (quoting *Bernstein v. City of New York*, 621 F. App'x 56, 58-59 (2d Cir. 2015)). "In the case of a public accommodation for which other reasonable substitutes may exist, like restaurants and malls, the plaintiff must plead facts that tend to show that the plaintiff will likely frequent the area where the public accommodation is located and is interested in what it has to offer." *Hirsch v. Campaniello Soho, Inc.*, No. 14-CV-5097 (LGS), 2015 WL 678662, at *3 (S.D.N.Y. Feb. 17, 2015) (rejecting the plaintiff's allegations regarding his intent to return to the furniture store as "conclusory"). "In order to be 'plausible,' a plaintiff's intent to return to the place of the purported violation must also be demonstrated with reasonable specificity; speculative 'some day' intentions to return are insufficient." *Access 4 All, Inc. v. G&T Consulting Co.*, No. 06-CV-13736 (DF), 2008 WL 851918, at *4 (S.D.N.Y. Mar. 28, 2008) (quoting *Lujan*, 504 U.S. at 564).

Plaintiff alleges that (1) he has patronized Defendant's restaurants in the past, *see* Compl. ¶ 21; (2) lives within a block of one of Defendant's restaurants, *id.* ¶ 25, and (3) "intends to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind and utilize it at Defendant's restaurant," *id.* ¶ 21. Although his allegations are not especially detailed, they do plausibly allege an intent to return under this district's case law. *See Grella v. Avis Budget Grp., Inc.*, No 14-CV-8273 (CM),

2016 WL 638748, at *4 (S.D.N.Y. Feb. 11, 2016) ("Plaintiff's conditional intention to return to Zipcar is plausible because he was previously a member and liked the service it provided[.]"); *G&T Consulting Co.*, 2008 WL 851918, at *8 (concluding that the allegations are sufficient to plead an intent to return based on the fact that the plaintiff had patronized the mall in the past, lives close to the mall and passes it frequently, and anticipates visiting it again); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01-CV-5518 (MBM), 2003 WL 1751785, at *8 (S.D.N.Y. Apr. 2, 2003) (finding the plaintiffs' "desire to return to Jean Georges is plausible given the fact that they live in New York and have been to the restaurant in the past").

In *Small v. General Nutrition Companies*, for instance, the court held that the individual plaintiff had standing to sue the GNC store that he "has lived near . . . for many years and [from which he] frequently purchases GNC products[.]"  388 F. Supp. 2d at 89.  Although the court noted that a plaintiff's proximity to the public accommodation "is insufficient, on its own, to establish Title III's . . . 'intent to return' requirement[]," it ultimately concluded that proximity – in addition to past patronage and a stated desire to return – was sufficient.  *Id.* at 90.  And more recently, in the *Taco Bell* case, Judge Schofield concluded that the intent-to-return requirement was sufficiently pled based on allegations "that Plaintiff has been a Taco Bell customer 'on prior occasions and intends to immediately purchase at least one store gift card from Defendant as soon as the Defendant sells store gift cards that are accessible to the blind.'"  *Taco Bell Corp.*, 2020 WL 3263258, at *2.  Like the cases discussed and cited above, Plaintiff also claims past patronage of and close proximity to the public accommodation at issue, as well as a stated desire to return.

It is true that Plaintiff has not alleged other facts regarding, for instance, his "occupation or demonstrated travel habits," *Ortiz*, 2016 WL 6901314, at *5, or "interest[s] in what Defendant's [restaurant] has to offer," *Hirsch*, 2015 WL 678662, at *4, that might assist the Court in determining whether he has a plausible intent to return. And recently, in *Banana Republic, LLC*, Judge Woods determined that allegations strikingly similar to those here were insufficient to establish standing. *See* 2020 WL 19506496, at *4 (concluding that the allegations were "generic, conclusory statements" that do not "profess an interest in procuring contemporary, affordable workwear" or demonstrate that plaintiff "owns several Banana Republic pieces already and wishes to continue compiling a collection with the help of a Banana Republic gift card"); *see also Dominguez v. Grand Lux Cafe LLC*, No. 19-CV-10345 (MKV), 2020 WL 3440788, at *3 (S.D.N.Y. June 22, 2020) ("Dominguez has failed to establish standing under the ADA because he does not offer any 'non-conclusory factual allegations' that demonstrate a plausible intention to return to a Grand Lux Café restaurant but for barriers to access.").

Defendant urges the Court to follow the analysis in *Banana Republic, LLC* and to conclude that Plaintiff has not properly alleged an intent to return on several grounds. First, it contends that it is "[t]elling[]" that "Plaintiff does not allege that he has ever visited Defendant's store to purchase a gift card," suggesting that this "raises a strong inference that Plaintiff does not intend to visit the store in the future, even if the alleged barriers are removed." Def.'s Mot. at 20. The critical inquiry here is whether Plaintiff has alleged a plausible intent to return to Boston Market, where he was previously a customer, and not whether he previously visited the store specifically to purchase a gift card.

Second, Defendant notes that Plaintiff has "fil[ed] . . . 13 nearly identical complaints against other retailers in this District," seeking to cast doubt on whether Plaintiff has a genuine intent to return.  Def.'s Mot. at 21.  Several other courts in this district have opined on this very question – that is, what effect a litigant's filing of similar claims against different defendants should have on a standing analysis.  As one court concluded, "[t]here is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical."  *Mendez v. Apple Inc.*, No. 18-CV-7550 (LAP), 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019); *see also Camacho v. Vanderbilt Univ.*, No. 18-CV-10694 (KPF), 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019) ("Plaintiff does not lack standing here merely because he believes that he has been similarly injured by other colleges and universities.").  The Court agrees.  Although the purported "cut-and-paste" nature of this litigation may in some instances call into question the plausibility of a plaintiff's intent to return, here Plaintiff's past visits to Defendant's restaurants, close proximity to one of its restaurants in New York City, and stated desire to return are sufficient.  *See, e.g.*, *Taco Bell Corp.*, 2020 WL 3263258, at *2; *G&T Consulting Co.*, 2008 WL 851918, at *8; *Small*, 388 F. Supp. 2d at 89-90; *Disabled in Action of Metro. N.Y.*, 2003 WL 1751785, at *8.

Accordingly, Plaintiff has plausibly alleged standing, and Defendant's Rule 12(b)(1) motion is denied.

## II. Merits

Having found that Plaintiff has standing, the Court turns to Defendant's Rule 12(b)(6) motion.  The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation."  42 U.S.C. § 12182(a).  To state a claim under Title III of the ADA, a plaintiff must allege that "(1) she is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide."  *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D.N.Y. 2018).

This action "presents a number of issues of first impression, all of which can be reduced to one relatively straightforward question: does Title III of the ADA obligate retailers to provide legally blind consumers with Braille-embossed (or otherwise accessible) gift cards?"  *Banana Republic, LLC*, 2020 WL 1950496, at *5.  Plaintiff raises a number of theories as to how the ADA applies to Defendant's gift cards, namely (1) whether a gift card is itself a public accommodation; (2) whether a gift card is a good sold by a public accommodation that must itself be accessible to visually impaired people; (3) and whether Defendant's failure to offer Braille-embossed – or otherwise accessible – gift cards is a failure to offer an appropriate auxiliary aid or service.  Each of these arguments is unpersuasive.

### A.  Whether a Gift Card Is a Public Accommodation

First, Plaintiff attempts to argue that the gift cards are themselves a "place of public accommodation."  *See* Pl.'s Opp. at 17 ("[T]his Court should deem gift cards a 'place of public accommodation' in and of themselves."); *see also* Compl.  ¶ 42.  This effort fails.

Title III of the ADA prohibits disability-based discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation" in connection with the goods and services "of [that] place of public accommodation."  42 U.S.C. § 12182(a).  Defining a "public accommodation," the statute provides that "private entities are considered public accommodations . . . if the operations of such entities affect commerce" and fall into one of

twelve categories.  *Id.* § 12181(7).  Each of the twelve categories includes a list of specific entities followed by a general residual clause.  *See, e.g.*, *id.* § 12181(7)(B) ("a restaurant, bar, or other establishment serving food or drink"); *id.* § 12181(7)(E) ("a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment").  While it was intended that "the 12 categories are an exhaustive list," "within each category[,] the examples given are just illustrations."  U.S. Dep't of Justice, ADA Title III Technical Assistance Manual: Covering Public Accommodations and Commercial Facilities, III-1.2000 Public Accommodations, *available at* https://www.ada.gov/taman3.html (visited on June 23, 2020).

Gift cards, however, bear no similarity to any of the entities included in the twelve categories in 42 U.S.C. § 12181(7).  Two interpretive canons – *noscitur a sociis*, which provides that "a word is known by the company it keeps," and *ejusdem generis*, which construes general words followed in a statute by specific words to be of the same in kind as those specific words – help inform the Court's analysis here.  *Yates v. United States*, 574 U.S. 528, 543, 545 (2015).  Both of these principles "examine markers of congressional intent within [a statute]" in order to protect against an undue expansion of statutory text.  *Id.* at 546.  Section 12181(7) defines "public accommodations" as "private entities" that sell and/or offer goods or services.  Although several subsections refer to goods sold at an entity, that text is used merely to help define the respective entity.  For illustration, consider the statutory text defining a "public accommodation" as "a restaurant, bar, or other establishment serving food or drink."  42 U.S.C. § 12181(7)(B).  The subject of the residual clause is "establishment," not the "food or drink" that is being "serv[ed]."  *Id.*  Therefore, based on the text of the statute alone, a gift card does not plausibly fall into the scope of the text's definition of a "public accommodation."[3]  *See Taco Bell Corp.*,

_____

[3] Plaintiff does not attempt to argue that gift cards fall into a specific category of 42 U.S.C. § 12181(7).

2020 WL 3263258, at *5 ("Nothing on the list [in § 12181(7)] even remotely resembles a gift card.").

The Fifth Circuit's decision in *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016), is instructive.  There, a visually impaired plaintiff argued that Coca-Cola's vending machines, located in a hospital and bus station, were not accessible.  *See id.* at 531.  The Fifth Circuit rejected the argument that a vending machine was a "place of public accommodation" because "a vending machine is not akin to any of the listed examples [in § 12181(7)]."  *Id.* at 534.  "[R]ather than falling within any of those broad categories of entities," it explained, "vending machines are essentially always found inside those entities along with the other goods and services that they provide."  *Id.*

Indeed, Plaintiff's own allegations emphasize the distinction between the good sold at a public accommodation and a public accommodation itself.  In his complaint, Plaintiff repeatedly refers to gift cards as a product sold in Defendant's restaurants.  He alleges that "Defendant has sold store gift cards, presently sells store gift cards and, upon information and belief, intends to continue selling store gift cards that are not accessible to blind and vision-impaired consumers[.]"  Compl. ¶ 15; *see also id.* ¶ 16 (explaining that he "telephoned Defendant's customer service office in an attempt to purchase a store gift card from the Defendant and inquired if Defendant sold store gift cards containing Braille").  The gift cards sold at Defendant's restaurants are thus similar in kind to the "food or drink" in the statutory text: "a restaurant, bar, or other establishment serving food or drink."  42 U.S.C. § 12181(7).

In urging his novel theory, Plaintiff attempts to analogize gift cards to websites.  *See* Pl.'s Opp. at 17 ; *see also id.* at 4 ("[T]he cards themselves are treated as a 'place of public accommodation' just like websites, because they are also a means of communication to assist

customers in interacting and obtaining the benefits of the public accommodation.").  Although

the Second Circuit has yet to rule on this issue, a number of courts in this district have held that

private commercial websites that affect commerce are "place[s] of public accommodation" under

the ADA.  42 U.S.C. § 12182(a); *see, e.g.*, *Harty v. Nyack Motor Hotel Inc.*, No. 19-CV-1322

(KMK), 2020 WL 1140783, at *4 (S.D.N.Y. Mar. 9, 2020) (collecting cases); *Thorne v. Formula*

*1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019)

("[M]ultiple district courts in this circuit have held that websites qualify as places of public

accommodation under the ADA."); *Del-Orden v. Bonobos, Inc.*, No. 17-CV-2744 (PAE), 2017

WL 6547902, at *1 (S.D.N.Y. Dec. 20, 2017) ("The Court today joins the growing number of

courts to hold that commercial websites qualify as 'public accommodations' within the meaning

of the ADA, such that the ADA's protections extend to blind persons who claim discriminatory

access to such websites.").

A gift card, however, is not analogous to a website.  In the ADA-website cases, courts

have largely found that a private commercial website serves as an alternative or additional

marketplace to one made of brick-and-mortar because the website also facilitates the sale and

exchange of goods and services.  In *Del-Orden*, for instance, Judge Engelmayer concluded that a

website was a "place of public accommodation" because "interpretive tools strongly support

construing the term 'public accommodation' to apply to commercial marketplaces, including on

the Internet, whether or not these marketplaces take a conventional physical form."  2017 WL

6547902, at *9.  He noted that "[t]oday, few areas are more integral to 'the economic and social

mainstream of American life' than the Internet's website."  *Id.* (internal citation omitted)); *see*

*also Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 398 (E.D.N.Y. 2017) ("Today,

internal technology enables individuals to participate actively in their community and engage in

commerce from the comfort and convenience of their home.").  As another court recently explained, "the phrase 'place of public accommodation' most logically reads as referring to space – figurative or not – that can provide the services of a public accommodation."  *Banana Republic, LLC*, 2020 WL 1950496, at *7.

But here there is no plausible argument that a gift card constitutes a "space" that "can provide the services of a public accommodation."  *Id.*  A gift card does not offer a *place* to purchase a good or service.  Instead, the gift card is itself the good that can be purchased at such a place.  "Put differently, a consumer can make a purchase *with* a gift card, but not *on* or *in* a gift card."  *Id.* at *8.  Indeed, Plaintiff fails to even substantively address the analogy to websites, only merely asserting that the two are similar.  *See, e.g.*, Pl.'s Opp. at 17.  Nor does he cite any case law to support this proposition.

Accordingly, the Court rejects Plaintiff's argument that gift cards are a "place of public accommodation."

## B.  Whether the ADA Requires Defendant to Sell Accessible Gift Cards

Next, Plaintiff argues that even if gift cards are not themselves places of public accommodation, Defendant violates the ADA by failing to sell them in accessible form.  *See* Compl. ¶ 55.  Specifically, he contends that the accessible gift cards should "include Braille writing" to, in part, "identif[y] the name of the merchant and the denomination of the gift card[.]"  *Id.*  Plaintiff disputes, however, that gift cards are goods sold by Defendant, instead asserting that they are "an optional financial service."  Pl.'s Opp. at 13.

As an initial matter, the Court disagrees with Plaintiff's contention that "[g]ift cards are not goods" and that he "is not demanding specialized goods to be inventoried, nor is [he] seeking Defendant to alter its current gift cards[.]"  *Id.*  Although the ADA does not define "goods," the

Supreme Court recently considered the definition of "goods" under the Lanham Act – which also does not define the term – and concluded that the most natural reading of that term was "[w]ares; merchandise." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003) (quoting Webster's New International Dictionary). Other dictionaries define the term in a similar manner. *See* MERRIAM-WEBSTER, "Goods," *available at* https://www.merriam-webster.com/ (last visited on June 23, 2020) (defining "goods" as "something manufactured or produced for sale"). The most natural understanding of a gift card is therefore as a good – that is, an article offered for sale, often presented as a gift. A gift card is a product sold by Defendant at its restaurants. Like any other of its products – which, of course, include food and drink – a gift card is manufactured, displayed for sale in its restaurants, and purchased by customers by the same means that they would purchase any other product. *See Taco Bell Corp.*, 2020 WL 3263258, at *4 ("Taco Bell gift cards are items of inventory offered for sale."); *Banana Republic, LLC*, 2020 WL 1950496, at *6 ("Gift cards are plainly the type of goods a business normally offers[.]").

In disputing that gift cards are goods, Plaintiff argues that "gift cards are an optional financial service providing an alternative method of payment," Pl.'s Opp. at 13, or "a cash like service," *id.* at 17. In making this argument, Plaintiff analogizes gift cards to U.S. currency, relying exclusively on *American Council of the Blind v. Paulson*, 463 F. Supp. 2d 51 (D.D.C. 2006). The court in *Paulson*, however, concluded that "the Treasury Department's failure to design, produce and issue paper currency that is readily distinguishable to blind and visually impaired individuals violates § 504 of the Rehabilitation Act," and not the ADA. *Id.* at 63. The Rehabilitation Act governs programs or activities funded or subsidized by federal money, including the Treasury Department's production of currency. *See* 29 U.S.C. § 794(a). It does

not, by contrast, govern private entities such as Defendant in this action.  In any event, the Court is not persuaded that gift cards are analogous to currency.  As the D.C. Circuit explained in affirming the *Paulson* decision, cash is intended to serve as a "universal medium or common standard[.]"  *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1268 (D.C. Cir. 2008).  And as Judge Woods rightly noted in *Banana Republic, LLC*, cash "is functionally a non-optional gateway to economic participation."  2020 WL 1950496, at *11 n.8.  Whereas, as Plaintiff himself notes, gift cards are – at best – an "optional" financial tool.[4]  Pl.'s Opp. at 13, 17, 18.

Because the Court concludes that gift cards are goods sold by a public accommodation under the ADA, Defendant cannot be required to sell accessible gift cards.  The Department of Justice's ("DOJ") implementing regulations clearly state that Title III of the ADA "does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities."[5]  28 C.F.R. § 36.307(a).  Accessible or special goods include, for example, "Brailled versions of books, books on audio cassettes, closed-captioned video tapes, special sizes or lines of clothing, and special foods to meet particular dietary needs."  *Id.* § 36.307(c).  The rationale is that "[t]he purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a

---

[4] Plaintiff also obliquely suggests that gift cards are "an optional financial service," and thus not goods, because the Internal Revenue Service treats "[t]he sale of a gift certificate or a gift card . . . as an advance payment for tax purposes."  Pl.'s Opp. at 13 n.38.  The Court, however, agrees with Judge Woods that "[h]ow and when the retailer ultimately reports the income generated from the sale of a gift card . . . functionally does not change the fact that a retailer sells gift cards to consumers the same way that they sell any other product in its stores."  *Banana Republic, LLC*, 2020 WL 1950496, at *6.

[5] As Defendant notes, "Congress and the DOJ are familiar with Braille and know how to require Braille when they wish to do so."  Def.'s Mot. at 12 n.9.  For instance, the DOJ regulations note that ATMs and fare machines must include "Braille instructions," in addition to other accessibility requirements.  28 C.F.R. pt. 36, App'x B; Def.'s Mot. at 12 n.9.  It was thus a policy decision, which the Court must respect, not to require public accommodations to carry accessible goods.  *See Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) ("Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards.").

public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided."  28 C.F.R. pt. 36, App'x C; *see also* Am. Br. at 5 ("One hallmark of the ADA and its implementing regulations is a careful balance between increasing accessibility for people with disabilities on the one hand, and allowing places of public accommodation to conduct their business efficiently on the other.").

The facts presented here are similar in kind to the hypotheticals posed in the DOJ's commentary on these regulations.  The DOJ explains that while "a bookstore . . . must make its facilities and sales operations accessible to individuals with disabilities," it "is not required to stock Brailled or large print books."  28 C.F.R. pt. 36, App'x C.  Similarly, "a video store must make its facilities and rental operations accessible, but is not required to stock close-captioned video tapes."  *Id.*  Applying that logic here, while Defendant must make its restaurants accessible to Plaintiff, it is not required to stock accessible goods, including accessible gift cards.

Several circuits have recognized the ADA's limit in this regard.  As the Seventh Circuit noted, "[t]he common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated."  *Doe*, 179 F.3d at 560.  The Ninth Circuit too has explained that Title III of the ADA requires that "whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services."  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000).  "This language," however, "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided."  *Id.*  And the Fifth Circuit explained:

> To be sure, we think that the plain language of the statute demonstrates that a business is not required to alter or modify the goods or services it offers to satisfy Title III.  The prohibition of [Title III] is directed against owners, etc., of places of public accommodation. It prohibits them from discriminating against the disabled. The discrimination prohibited is that the owner, etc., may not deny the disabled *the full and equal enjoyment* of the business's goods and services.  Practically speaking, how can an

> owner, etc., deny the full and equal enjoyment of the goods or services that he offers?  By denying access to, or otherwise interfering with, the use of the goods or services that the business offers.  The goods and services that the business offers exist *a priori* and independently from any discrimination.  Stated differently, the goods and services referred to in the statute are simply those that the business normally offers.

*McNeil v. Time Ins. Co.*, 205 F.3d 179, 186-87 (5th Cir. 2000); *see also Funches v. Barra*, No. 14-CV-7382 (KPF), 2016 WL 2939165, at \*4 (S.D.N.Y. May 17, 2016) (stating that because "the ADA does not generally require a business to 'alter its inventory to include accessible or special goods,'" "neither the GM Defendants nor the Mercedes Defendants were required to alter the mix of goods they sell by manufacturing a set portion of their vehicles with hand controls").

Because gift cards are goods sold by Defendant and because the ADA does not require a public accommodation to alter its inventory to include accessible goods, Defendant need not make its gift cards accessible.[6]

## C.  Whether Defendant Fails to Provide Sufficient Auxiliary Aids

Finally, Plaintiff argues that he "has plausibly pled that the lack of sufficient auxiliary aids regarding Defendant's gift cards amounted to a denial of the full and equal enjoyment of services Defendant otherwise provides to the public."  Pl.'s Opp. at 19; *see id.* at 20 ("Defendant does not offer an alternative means of effective communication for its gift cards.").  In particular, he asserts that "[d]ue to the lack of auxiliary aids for Defendant's gift cards, Plaintiff cannot ascertain information about the gift card, like the balance, the gift card's terms and conditions of use, or even be able to distinguish Defendant's branded gift cards from others in the same manner as non-blind persons."  Compl. ¶ 20.

---

[6] Defendant also contends that what Plaintiff seeks are "fundamental alterations of [its] gift cards, another thing the ADA explicitly states is not required."  Def.'s Reply at 2.  A place of public accommodation is not required to modify its "policies, practices, or procedures" or take other steps to avoid disability-based discrimination if "the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).  Because the Court concludes that the ADA does not require Defendant to alter gift cards in the first place, it need not consider whether the fundamental-alteration exception might apply.

Under the ADA, discrimination by a public accommodation is defined, in part, as:

> [A] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]

42 U.S.C. § 12182(b)(2)(A)(iii); *see also* 28 C.F.R. § 36.303(a).  DOJ regulations, therefore, require "[a] public accommodation [to] furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."  28 C.F.R. § 36.303(c)(1).  Examples of "auxiliary aids and services" "include[] . . . qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments."  42 U.S.C. § 12103(1)(B); *see also* 36 C.F.R. § 36.303(b)(2) (listing examples of "auxiliary aids and services" as "[q]ualified readers," "Brailled materials and displays," and "large print materials").  The regulations do not prescribe the adoption of a particular auxiliary aid or service, but instead recognize that "effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place."  *Id.* § 36.303(c)(1)(ii).  While "[a] public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, . . . the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication."  28 C.F.R. § 36.303(c)(1)(ii); *see also* 28 C.F.R. pt. 36, App'x C ("The auxiliary aid requirement is a flexible one.").

First, it appears that Plaintiff seeks the implementation of only one particular auxiliary aid – Braille.  At oral argument, Plaintiff stated that "without Braille, all other auxiliary aids

fail." Dkt. 37 at Tr. 25:3; *see also id.* at Tr. 25:12-15 ("[W]e pose that the only auxiliary aid that

works, in the first instance, is braille[.]"); Pl.'s Opp. at 20 ("Plaintiff has plausibly alleged the

absence of brailled gift cards[.]").  But as the regulations make clear, "the ultimate decision as to

what measures to take rests with the public accommodation, provided that the method chosen

results in effective communication."  28 C.F.R. § 36.303(c)(1)(ii); *see also* 28 C.F.R. pt. 36,

App'x C ("Based upon a careful review of the ADA legislative history, . . . Congress did not

intend under [T]itle III to impose upon a public accommodation the requirement that it give

primary consideration to the request of the individual with a disability.").[7]

Examples in the DOJ's commentary on these regulations illustrate the flexibility that a

public accommodation has in choosing what auxiliary aid or service to provide.  For instance, "a

restaurant would not be required to provide menus in Braille for patrons who are blind, if the

waiters in the restaurant are made available to read the menu," and "a clothing boutique would

not be required to have Brailled price tags if sales personnel provide price information orally

upon request."  28 C.F.R. pt. 36, App'x C; *see also Camarillo*, 518 F.3d at 157 ("While

restaurants are not necessarily required to have on hand large print menus that [the plaintiff]

would be able to read, they are required to ensure that their menu options are effectively

communicated to individuals who . . . are legally blind.").  Several cases in this district have

similarly rejected the argument that a public accommodation must necessarily provide auxiliary

aids or services that allow visually impaired people to act independently.  *See West v. Moe's*

---

[7] The amici curiae brief questions whether Braille would even "be an effective or efficient auxiliary aid or service" for gift cards.  Am. Br. 10-11.  It first contends that because a small number of people who are visually impaired can read Braille, it would be a wasteful "burden and expense of designing and stocking Braille gift cards[.]"  *Id.*  Second, it notes that adding Braille to a gift card is a significant design change and that gift cards do not have "sufficient space to include all the information that Plaintiff seeks or that amici's members might otherwise be required to include."  *Id.* at 11.  Because the Court finds that Plaintiff does not plausibly allege that Defendant fails to provide an appropriate auxiliary aid or service, it need not consider whether Braille would be viable auxiliary aid.  *See Banana Republic, LLC*, 2020 WL 1950496, at *11 n.7 ("[T]he posture of this case means that the Court need not and should not determine the viability of a Braille gift card as an effective auxiliary aid").

*Franchisor, LLC*, No. 15-CV-2846 (WHP), 2015 WL 8484567, at *3 (S.D.N.Y. Dec. 9, 2015)

("Nothing in the ADA or its implementing regulations supports Plaintiffs' argument that Moe's

must alter its [soda] machines in a way that allows blind individuals to retrieve beverages

without assistance."); *see also DiCarlo v. Walgreens Boot All., Inc.*, No. 15-CV-2919 (JPO),

2016 WL 482982, at *2 (S.D.N.Y. Feb. 5, 2016) (rejecting the contention "that the ADA requires

installation of technology allowing [the plaintiff] to use the machine independently" so long as

the plaintiff "alternatively [receives] the assistance of a qualified Walgreens employee").

Accordingly, the Court rejects Plaintiff's contention that Defendant failed to provide appropriate

auxiliary aids or services solely on the basis that it did not provide Braille-embossed gift cards.[8]

To the extent that Plaintiff argues that Defendant's gift cards lack other auxiliary aids or

services, his allegations are too conclusory to survive the motion to dismiss.  Plaintiff asserts that

he "telephoned Defendant's customer service office in an attempt to purchase a store gift card

from the Defendant and inquired if Defendant sold store gift cards containing Braille" and was

"informed . . . that Defendant does not sell store gift cards containing Braille."  *Id.* ¶ 16.  He also

alleges that Defendant's employee did not "offer any alternative auxiliary aids or services to the

Plaintiff with respect to Defendant's gift card."  *Id.* ¶ 17.  Based on that conversation, and that he

could not elsewhere "locate accessible store gift cards to purchase," Plaintiff alleges that "[u]pon

information and belief, Defendant does not offer auxiliary aids with respect to gift cards."  *Id.* ¶¶

18-19.

---

[8] Plaintiff attempts to analogize gift cards to ATMs, which must include "Braille instructions."  28 C.F.R. pt. 36, App'x B.  But Plaintiff's comparison of a gift card to an ATM is inapposite.  At a minimum, an ATM requires inputting a personal pin number, which will then display one's account information and permit someone to withdraw money at any given time.  A gift card, by contrast, does not have similar features or present any of the same risks of possible abuse.  Gift cards do not require a particular pin to use; a person cannot exchange the balance of a gift card for cash; and its use is often limited to a particular establishment and money balance.  In brief, a gift card does not raise the same "heightened privacy concerns" as ATMs.  Pl.'s Opp. at 10.

These allegations do not plausibly allege that Plaintiff was denied an appropriate auxiliary aid or service beyond being denied a Braille-embossed gift card.  Plaintiff only asked Defendant's employee about the availability of a Braille-embossed gift card.  He did not ask whether Defendant offers any other auxiliary aid or service to assist visually impaired people with respect to its gift cards.  Nor does he allege that he took *any* other steps to find out what auxiliary aids or services Defendant might offer with respect to its gift cards.  *See Banana Republic, LLC*, 2020 WL 1950496, at *11 (explaining that "Plaintiff could have easily asked [Defendant's] customer service office what gift card related accommodations [Defendant] offers legally-blind patrons, just as he asked whether [Defendant] sells Braille gift cards").  Without seeking to learn this information – during either the October 21, 2019 phone call or through any other means – Plaintiff has no basis on which to allege that Defendants do not offer other appropriate auxiliary aids or services with respect to its gift cards.[9]  Indeed, because this information was easily available, it is simply too conclusory for Plaintiff to assert here that "[u]pon information and belief, Defendant does not offer auxiliary aids with respect to gift cards."  *Id.* ¶ 19; *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that "pleading facts alleged 'upon information and belief'" is appropriate when "the facts are peculiarly within the possession and control of the defendant").[10]

---

[9] There is some tension in Plaintiff's argument that "the lack of sufficient auxiliary aids regarding Defendant's gift cards amounted to a denial of the full and equal enjoyment of services Defendant otherwise provides to the public."  Pl.'s Opp. at 19.  Plaintiff admits that he spoke with one of Defendant's employees about its gift cards, Compl. ¶ 16, and received an answer to the question that he posed.  If anything, this indicates that Plaintiff is capable of speaking with Defendants' employees – either on the phone or in one of the restaurants – to seek assistance with using Defendant's gift cards.

[10] Plaintiff also asserts that Defendant has "[f]ail[ed] to train [its] employees with the proper methods of assisting blind and visually-impaired customers with regards to its gift cards and auxiliary aids."  Compl. ¶ 48(e). But this allegation is also conclusory.  Plaintiff never explains how Defendant's employees are insufficiently trained. And his allegations regarding the single call he had with one of Defendant's employees do not support this assertion. *See also West*, 2015 WL 8484567, at *4 (holding that "allegations [that] hinge on a single visit to a [] restaurant" cannot produce a "reasonable inference . . . that [the restaurant] fails to train its employees to provide effective auxiliary aids and services").

While Plaintiff has plausibly alleged the denial of a Braille-embossed – or otherwise accessible – gift card, he has not plausibly pled that Defendant fails to offer appropriate auxiliary aids or services to assist visually impaired people in using its gift cards.  In light of the "flexible" auxiliary aid requirement, 28 C.F.R. pt. 36, App'x C, and Plaintiff's conclusory allegations, this claim also fails as a matter of law.

## III.    State & Municipal Claims

Because the Court dismisses the ADA claim in this action, it declines to exercise supplemental jurisdiction over Plaintiff's state and municipal claims.  Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  But a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

Here, the Court has already granted Defendant's motion to dismiss as to the federal claim.  Because the Court addressed and dismissed that ADA claim early in this litigation, declining jurisdiction over the state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness.

## CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(6) motion is granted.  The Clerk of

Court is respectfully directed to terminate the motions pending at docket entries 14 and 19.

SO ORDERED.

Dated:     June 29, 2020
           New York, New York

_____
Ronnie Abrams
United States District Judge